# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**SHARANDAE KATARA BRANNON**　　　　**CASE NO.  6:21-CV-02306**

**VERSUS**　　　　　　　　　　　　　　　**JUDGE DAVID C. JOSEPH**

**U S COMMISSIONER OF SOCIAL**　　　　**MAGISTRATE JUDGE CAROL B.**
**SECURITY**　　　　　　　　　　　　　　**WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

## Administrative Proceedings

Claimant, Sharandae Brannon, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits, alleging disability beginning on April 4, 2015. Her application was denied. (Rec. Doc. 13-1, p. 94). She then requested a hearing, which was held on November 20, 2020 before Administrative Law Judge Steven Rachal. The ALJ issued a decision on March 16, 2021 concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 13-1, p. 14-23). Claimant requested that

the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 13-1, p. 6). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on March 8, 1975. She was 40 years old on the alleged disability onset date and 46 years old at the time of the ALJ's decision. She obtained a GED and attended some college. She also had vocational training as a law enforcement officer and in security. (Rec. Doc. 13-1, p. 46). She has not worked since she was injured on the job while working for the U.S. Postal Service in 2015. (Rec. Doc. 13-1, p. 46-47). Otherwise, her job history includes work as a police officer where she was on patrol and worked in a corrections facility. She also worked for private security companies. (Rec. Doc. 13-1, p. 48-50). She alleged that she has been disabled since her on-the-job injury in March 2015 when she sustained a ruptured right Achilles, resulting in surgery. (Rec. Doc. 13-1, p. 50).

The medical records in the record reveal the following pertinent history:

- Claimant saw Dr. Steven McPherson as primary care beginning in April 2014 through November 2014. These records show that Claimant was in relatively good health prior to her injury, except for anemia, obesity, diabetes II, dyslipidemia, and hypertension. (Rec. Doc. 13-1, p. 338-42).

2

- Claimant injured her right ankle when she tripped in a hole while delivering mail on April 4, 2015. (Rec. Doc. 13-1, p. 358).

- Dr Andre Cenac, orthopedic surgeon, treated Claimant's ankle injury conservatively, with a boot, ankle brace, physical therapy, and medication from April 2015 through January 2016, at which point her physical exam showed tenderness in the 1+ anterior drawer and a mild nodular formation at the distal portion of the Achilles insertion. Dr. Cenac recommended a detailed MRI. In August 2015, she was being treated conservatively for retro-Achilles bursitis and was released to full duty and to return as needed. However, by September 2015, conservative treatment was failing, and she remained off duty pending the MRI. (Rec. Doc. 13-1, p. 350-58).

- Claimant did physical therapy for her right ankle for one month in May through June 2015. The records note decreased range of motion and strength, and increased edema/effusion, with abnormality of gait and pain secondary to right ankle sprain and retro Achilles bursitis. She was discharged after workers' compensation denied additional visits. (Rec. Doc. 13-1, p. 345-47).

- Claimant's date last insured was September 30, 2017.[1] (Rec. Doc. 13-1, p. 16).

- Claimant consulted with Harold Fizzell, APRN for Dr. Susan Uhrich for a psychiatric evaluation on June 26, 2018. She presented with depression, anxiety, and insomnia after her brother died and she "lost everything because of being on workman comp." The diagnosis was major depressive disorder, single episode, severe without psychotic features; generalized anxiety disorder; panic disorder; insomnia, obsessive compulsive disorder; and female sexual arousal disorder. She was prescribed a trial of Trintellix, Trazdone, and Buspar. (Rec. Doc. 13-1, p. 398-401).

- She saw Dr. Dana Dicharry in June and September 2018 for medication refills. (Rec. Doc. 13-1, p. 402-06).

---

[1]     Claimant did not challenge September 30, 2017 as the date last insured.

- She began seeing Dr. Sheron Steward with SRF Consulting regarding her depression and anxiety in February 2019. (Rec. Doc. 13-1, p. 407). Although subsequent records show that she continued counseling, there are no further records of treatment with Dr. Steward.

- Claimant treated with Dr. Shawn Granger at West State Orthopedic and Sport Medicine Clinic from March 2016 through June 2019 for her right ankle injury.

  o Dr. Granger performed a right ankle peroneus brevis tendon repair on June 30, 2016. (Rec. Doc. 13-1, p. 419-24).

  o Following the procedure and through the present she reported continued pain, weakness causing falls, limited range of motion, and instability. By March 2017, Dr. Granger opined she had reached maximum medical improvement and was waiting for an FCE and vocational rehabilitation report. In June 2017, she had tested at below maximal effort and raised a question of malingering, such that Dr. Granger recommended a consult with Dr. Quillen for psychometric testing to improve functional capacity. Eventually she received a specialized ankle brace, though she continued to walk with a cane and a limp. Dr. Granger questioned whether continued pain and complaints of numbness and pins/needles in her toes were due to a neuropathic component. He referred her for a second medical opinion with a foot and ankle specialist, but they were unable to find one who would accept workers compensation. Dr. Granger primarily oversaw her medication regime. (Rec. Doc. 13-1, p. 431-475).

  o In August 2017 (the last treatment within the relevant period), she continued with pain radiating posteriorly, anteriorly and laterally. She walked on the ball of her foot due to pain at the back of her ankle and had increasing right knee pain. She noted swelling in her right knee, ankle and foot. She had developed discoloration over the dorsal aspect of her foot with no associated trauma and had diffuse edema. She rated her pain at 8 to 10. She got some relief from medications. Dr. Granger's impression was continued limited range of motion and ankle instability. (Rec. Doc. 442-43).

4

    o In May 2019, Dr. Granger advised the workers compensation office that Claimant had been diagnosed with chronic ankle pain. He stated that she continued with pain despite the surgery and that she had developed an equinous contracture that makes mobilizing unassisted unsafe. Dr. Granger continued to recommend use of an Arizona brace which would stabilize the ankle, decreasing the risk of future falls and increasing the ability to ambulate with less pain. (Rec. Doc. 13-1, p. 489).

    o As of June 2019, examination of her ankle showed 2+ dorsalis pedis and posterior tibial pulses. Sensation was intact, but she had lost position sense of her toes. Range of motion was limited, and there was soft tissue swelling and enlargement of the achilles tendon and peroneal tendons laterally, with pain to palpation. The MRI showed a prior achilles tendon repair that was successful and some enlargement of the distal tendon noted, but no T2 signal change indicative of injury. The peroneal tendons showed enlargement without evidence of acute tendonitis or tendinopathy. Dr. Granger questioned whether there was a chronic rupture of the peroneus brevis, which appeared to be a new finding since a 2012 MRI. The impression was right ankle peroneus brevis tendon rupture with chronic peroneal and achilles tendonosis. Dr. Granger recommended that she continue conservative treatment with laser treatment and continue use of fracture boot and crutches/walker and remain non-weight bearing until pain free. They would only discuss possible surgical options if conservative treatment failed. (Rec. Doc. 13-1, p. 414-18).

    o Claimant most recently continued care with Dr. Granger through November 2020, per the record. She continued with her medications and had seen Dr. Cenac for a second opinion; however, this opinion is not in the record. She also continued with depression and had been under psychiatric care, which was a financial hardship she paid personally. (Rec. Doc. 13-1, p. 493-519).

- In May 2019 Dr. Granger imposed work restrictions of seated work only/mainly, no squatting/kneeling/twisting, no climbing stairs/ladders, no prolonged standing or walking, work with brace/cast, elevate when possible/continuous, crutches/cane/walker, and no twisting, pushing or pulling. She could return at sedentary only following guidelines of FCE.

The use of ankle brace and cane were permanent restrictions. She was to use both as needed and to continue psych evaluation/treatment. If no qualifying job was available, she was to remain off work. (Rec. Doc. 13-1, p. 408).

Claimant testified at the hearing that since the injury, she suffers from depression and weight gain. (Rec. Doc. 13-1, p. 51-52; 55). She is unable to drive, and she is in pain to sit for longer than 30 minutes, because the circulation stops and pain shoots up from the bottom of her foot. (Rec. Doc. 13-1, p. 53). She has walked with a cane to help keep her balance and avoid falling. (Rec. Doc. 13-1, p. 53-54). Her pain is at 10 unless she is not moving and taking her medication, which often changes. (Rec. Doc. 13-1, p. 54-55).

The ALJ found that Claimant was not disabled, because she was capable of performing sedentary work, subject to certain physical limitations, and that significant numbers of qualifying jobs existed in the national economy. Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

**B.**    <u>**Entitlement to Benefits**</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a).  See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2).  See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C.    <u>**Evaluation Process and Burden of Proof**</u>

A sequential five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v.*

*Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

###    D.    <u>The ALJ's Findings and Conclusions</u>

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since April 4, 2015. (Rec. Doc. 13-1, p. 17). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: residual effects of right lower extremity injury and obesity. (Rec. Doc. 13-1, p. 17). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 13-1, p. 17-18). Claimant does not challenge this finding.

The ALJ found that Claimant had the residual functional capacity (RFC) to perform sedentary work with the following physical restrictions: occasional operation of foot controls with right lower extremity; occasional climbing of ramps

and stairs, but never ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; requires a can for ambulation and balance. (Rec. Doc. 13-1, p. 18). Claimant challenges this finding insofar as she argues she is incapable of doing the work for which the ALJ found her capable.

At step four, the ALJ found Claimant was not capable of performing past relevant work. (Rec. Doc. 13-1, p. 22). Claimant does not challenge this finding.

At step five, the ALJ found Claimant was capable of performing jobs of document preparer, call out operator, and cutter/paster, significant numbers of which existed in the national economy. (Rec. Doc. 13-1, p. 23). Claimant challenges this finding to the extent she challenges the ALJ's RFC finding.

### E.    The Allegations of Error

Claimant, proceeding *pro se,* did not assert specific allegations of error. The Commissioner responds to the following allegations of error interpreted from her brief: 1) The ALJ failed to find that she suffered from depression as a severe impairment; 2) The Appeals Council failed to consider new evidence submitted after the hearing. Further, the Court interprets Plaintiff's brief as a challenge to the ALJ's RFC finding.

### F.    Whether the ALJ failed to consider Plaintiff's depression as a severe impairment.

Plaintiff argues in her brief that the ALJ failed to properly consider her depression as a severe impairment warranting a finding of disability. To evaluate

whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Therefore, in *Stone v. Heckler*, the Fifth Circuit established the following standard for determining whether a claimant's impairment is severe:  an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Id.* at 1101. See also *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The ALJ did not find that Claimant's depression constituted a severe impairment, because the records did not contain any objective medical evidence of a formal diagnosis or treatment, other than a treating source statement from Sheron Steward, PhD stating that she had seen Claimant several times through October 3, 2016. The Court agrees that substantial evidence in the record supports the ALJ's

finding. There are no documents in the record regarding Claimant's treatment for depression (other than Steward's statement). Although Dr. Granger's records indicate she was referred to Dr. Quillen for a psychometric testing, the records do not show that she ever underwent the evaluation. (Rec. Doc. 13-1, p. 431-475). Further, the records include a single evaluation with Harold Frizzell, APRN with Dr. Susan Uhrich, for depression, anxiety, panic disorder, insomnia, and obsessive-compulsive disorder. (Rec. Doc. 13-1, p. 398-400). In other words, there is no record evidence that Claimant's depression interferes with her ability to work. Thus, the ALJ did not err in failing to consider Claimant's depression as a severe impairment.

### G.    Whether the Appeals Council failed to consider new evidence.

Claimant submitted new evidence to the Appeals Council following the ALJ hearing. Her new evidence consisted of medical records from November 10, 2017 through April 1, 2021. (Rec. Doc. 13-1, p. 7; 63-69).

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhard*, 405 F.3d 332, 337 (5th Cir. 2005).   The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period

for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). "[T]he new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). When the new evidence does not relate to the contested time period or concerns a subsequently acquired disability, the proper action is to file a new application for disability benefits based on the new condition. *Id.*

Claimant submitted the following new evidence to the Appeals Council, each of which the Appeals Council found did not relate to the relevant time period, ending September 30, 2017:

1) May 22, 2019 Workers' Compensation Work Capacity Evaluation in which Dr. Uhrich concluded that Claimant was profoundly depressed with insomnia, highly variable appetite, anergy, anhedonia, nightmares of the injury and its consequences, flashbacks, constant suicidal ideation, showers up to 5 times a day and uses bottles of hand sanitizer (Rec. Doc. 13-1, p. 63). The Court finds that this evidence does relate to the relevant time period. The first record evidence of Claimant's treatment for depression was in June 2018. (Rec. Doc. 13-1, p. 398-401).

2) May 5, 2020 Workers' Compensation Attending Physician's Report from Dr. Shawn Granger stating that Claimant cannot work, that she has reached MMI and is only being treated for pain management. Her brace/cane did not fully prevent falls and her movement was restricted. She had depression related to the inability to work. The Court finds this evidence relates to the relevant time period, even though it post-dates September 30, 2017. Prior to that time, Dr. Granger had treated Claimant for the ankle injury, and in August 2017 had noted continued radiating pain with objective findings (i.e. swelling, discoloration, limited range of motion and instability). (Rec. Doc. 13-1, p. 419-24; 431-75; 442-43).

3) April 1, 2021 statement from Dr. Dana Dicharry stating that Claimant has several medical psychiatric comorbidities limiting her ability to work, including diabetes, hypertension, sleep apnea, anxiety, depression, and cardiology issues. Although Dr. Dicharry mentioned the previous ankle injury, the statement does not principally concern the injury and offers no meaningful conclusions in that regard. (Rec. Doc. 13-1, p. 65). Therefore, the Court finds that, to the extent the letter is relevant, the Appeals Council failure to consider it was harmless.

4) Undated photograph of multiple medications with Plaintiff's handwritten notation. (Rec. Doc. 13-1, p. 66). The Court finds the Appeals Council did not err in failing to consider this unauthenticated document. Medical records regarding Plaintiff's prescription medications are otherwise in the record.

5) November 6, 2017 print out of Web Bill Processing Portal from Office of Workers' Compensation (Rec. Doc. 13-1, p. 67). The Court finds the Appeals Council did not err in failing to consider this unauthenticated document. Evidence of the workers' compensation program's failure to approve a procedure is not relevant to the issues before the Court.

6) May 24, 2021 Attending Physicians Report from Dr. Granger again stating that Claimant is at MMI and is only being treated for pain management. (Rec. Doc. 13-1, p. 68). For the same reasons the May 2020 report related to the relevant period, the Court finds the Appeals Council should also have considered this record.

## H.    Whether the ALJ properly determined Claimant's RFC.

The Court reviews Claimant's general challenges to the ALJ's finding of non-disability in terms of the ALJ's RFC finding. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.

16

*Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

The ALJ found that Claimant was capable of performing sedentary work with the following physical restrictions: occasional operation of foot controls with right lower extremity; occasional climbing of ramps and stairs, but never ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; requires a can for ambulation and balance. (Rec. Doc. 13-1, p. 18). The ALJ cited the medical records outlined above and properly considered Claimant's obesity in assessing her RFC. (*Id*. at p. 20). Likewise, and as discussed above, the ALJ properly found that Claimant's depression did not affect her RFC. (*Id*. at p. 21).

In finding that Claimant should be restricted to sedentary work, the ALJ considered opinions from Dr. Jeffrey Faludi and Dr. Sheryl Smith, both state agency

medical consultants. The consultants found that Claimant could perform sedentary[2] work, with limited standing/walking to two hours; limited operation of foot controls; occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid exposure to hazards such as machinery and heights. (Rec. Doc. 13-1, p. 21 referencing p. 77-78; 90-91).

The ALJ did not consider Dr. Granger's May 15, 2019 work status report in which Dr. Granger (who had treated Claimant since March 2016) determined that she could do only/mainly seated work, no squatting/kneeling/twisting, no climbing stairs/ladders, no prolonged standing or walking, work with brace/cast, elevate when possible, use crutches/cane/walker, no twisting, pushing pulling. (Rec. Doc. 13-1, p. 408). The Court acknowledges that Dr. Granger's report post-dates the relevant period, which ended in September 2017. However, as discussed above, new evidence should be considered when it is material and related to the time period for which benefits were denied, rather than as a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

---

[2]    The ALJ erroneously stated that Dr. Faludi and Dr. Smith found that Claimant could perform light exertional work. It appears this was a typographical error. In any event, the error is harmless, because the ALJ assessed an RFC of sedentary.

Dr. Granger's work status report, with a clear indication of limitations which are more restrictive than the state consultants' conclusions, is certainly material. It also relates to the relevant time period. Dr. Granger treated Claimant for the ankle injury from March 2016, throughout 2017, and forward. His findings in the last record within the relevant period in August 2017 do not substantially differ from subsequent findings. (See Rec. Doc. 13-1, p.442-43).

The ALJ must also consider Dr. Granger's opinion pursuant to the standards of 20 C.F.R. 404.1520c. Although an ALJ is no longer required to give controlling weight to a treating physician's medical opinions, the regulations state that "[w]hen a medical source provides one or more medical opinions…, we will consider those medical opinions … from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). The factors to be considered are the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor which the claimant brings to the court's attention. 20 C.F.R. § 404.1520c(c)(1-5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).  With regard to supportability, the regulation states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support

19

his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). With regard to consistency, the regulation states that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). Thus, the ALJ is required to consider all of the medical opinions, focusing primarily on the supportability and consistency of each opinion.  In this regard, the Court notes that Dr. Granger examined and treated Claimant numerous times for several years. He was very familiar with her progress and her physical abilities as limited by her ankle even within the relevant period. Contrarily, the state medical consultants, upon whom the ALJ relied, did not examine Claimant and were not involved in her treatment or evaluation.

The Court finds that remand is warranted for the ALJ to consider all of Dr. Granger's records, and particularly his May 15, 2019 Work Status Report. For the same reasons, the ALJ should also consider Dr. Granger's March 25, 2022 Work Status Report (Rec. Doc. 17, p. 2). The ALJ should consider appropriate physical limitations in light of Dr. Granger's opinions and whether a sufficient number of qualifying jobs exists in the national economy.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate the claimant's residual functional capacity and whether she is disabled.  Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[3]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

---

[3] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[4]

Signed in Lafayette, Louisiana, this 24th day of May, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[4]     See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).